[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Defendant has filed this Motion to Dismiss on the grounds that the court lacks jurisdiction over the defendant. The defendant is a foreign corporation located in Pennsylvania which contracted with the plaintiff, a Connecticut company, to secure low-density polyethylene resin. The plaintiff, acting as a broker, arranged for the defendant to purchase a carload of polyethylene. This suit arises out of the plaintiff's claim of nonpayment.
The parties do not dispute the fact that plaintiff arranged for the purchase of polyethylene pursuant to an agreement. The parties do not dispute that the plaintiff conducted all of its activities, pertaining to obtaining for purchase the requisite materials, in Connecticut. Additionally, there is no dispute to the fact that the deal into which the parties entered was the type of transaction engaged in by the parties numerous times CT Page 13463 before, during the preceding eight month period.
The dispute is as to whether or not this transaction, in which a Connecticut broker secured materials from Louisiana for a foreign corporation, provides the necessary contacts to allow a Connecticut court to exercise jurisdiction over the foreign defendant corporation.
For the reasons more fully set forth in the Decision, this court holds that it may properly exercise jurisdiction over the defendant. Therefore, the defendant's Motion to Dismiss is denied.
I. PERTINENT FACTUAL BACKGROUND
It is undisputed that the defendant never came to Connecticut. It issued a purchase order from its Pennsylvania plant to the plaintiff's Southington, Connecticut office. The plaintiff confirmed the purchase order with the defendant and from its Southington, Connecticut office set about locating conforming goods from among the available suppliers, throughout the United States. Once the plaintiff, from its Connecticut location, located the requisite goods, it purchased them and arranged to have them shipped to the defendant. Plaintiff, also from its Connecticut office, confirmed the weight of the goods, and followed the goods through their delivery. The goods were shipped from its manufacturer in Louisiana to the defendant in Pennsylvania. The defendant accepted the delivered goods. Invoice for the goods was shipped directly from plaintiff's Connecticut office to the defendant. The defendant disputed the amount of the bill, claiming that it was entitled to a credit because of the unsuitability of a prior purchase, arranged by the plaintiff, of the same material.
The procedure of retaining the plaintiff to locate and purchase the goods is substantially the same procedure the parties followed in numerous transactions over the preceding several months. Nine times previously, the defendant had contracted with the plaintiff to locate, purchase and arrange to have various goods shipped to it.
II. LEGAL DISCUSSION A. Motion to Dismiss
CT Page 13464
"A motion to dismiss . . . `properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. Baskins Appeal from Probate, 194 Conn. 635,640 (1984).'" (Emphasis in the original.) Gurliacci v. Mayer,218 Conn. 531, 544 (1991). The motion to dismiss admits all facts that are well-pleaded, invokes the existing record and must be decided upon the face of the record alone. Barde v. Board ofTrustees, 207 Conn. 59, 62 (1988). When ruling a motion to dismiss, a court may not take evidence outside of the record.Young v. Chase, 18 Conn. App. 85, 95 (1989).
"When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present the evidence which will establish jurisdiction." Standard TallowCorp. v. Jowdy, 190 Conn. 48, 53-54 (1983). "[A] motion to dismiss challenging the court's jurisdiction, [requires] a two part inquiry . . . The trial court must first `decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process.' Frazer v. McGowan,198 Conn. 243, 246 (1986) . . ." Knipple v. Viking Communications,Ltd., 236 Conn. 602, 605 (1996).
B. Long-Arm Statute
The essence of one of the disputes between the plaintiff and the defendant revolves around whether or not a contract was made in Connecticut and whether or not a contract entered into between the parties was "performed" in Connecticut.
The Connecticut General Statutes require that:
 Every foreign corporation shall be subject to suit in this state, . . . whether or not such foreign corporation is transacting or has transacted business in this state . . . on any cause of action arising as follows: 1.) Out of any contract made in this state or to be performed in this state . . .
C.G.S. § 33-929(e). CT Page 13465
Only one of the conditions (the contract being made in Connecticut or the performance taking place in Connecticut) needs to be established in order to meet the requirements of the Connecticut Long-Arm statute. In this case, though, both of the requirements are met.
1. Contract Was Made in Connecticut
The defendant maintains that because the purchase order was issued in Sharon, Pennsylvania, the contract was created in Pennsylvania. The plaintiff counters that the contract was made in this state because the last thing necessary to create the enforceable agreement was done in Connecticut. The defendant cites no legal authority to support the proposition that a contract is made in the place from which the offer is tendered. Plaintiff cites numerous Connecticut state and federal cases to support its position that a contract is made in the place where the last necessary thing is done to create it.
The law is: "[a] contract is made when and where the last thing is done which is necessary to create an enforceable agreement." (Internal quotation marks omitted.) Pettey v. Group44, Docket No. 067705, Superior Court, judicial district of Litchfield (February 26, 1996, Pickett, J.). See, also, McFaddinv. National Executive Search, Inc., 354 F. Sup. 1166, 1170 fn. 8 (D. Conn. 1973); Electric Regulator Corp. v. Sterling ExtruderCorp. , 280 F. Sup. 550, 555 (D.Conn. 1968). A completed contract requires an offer and an acceptance. "Acceptance is operative, if transmitted by means which the offeror has authorized, as soon as its transmission begins and it is put out of the offeree's possession . . . irrespective of whether or when it is received by the offeror." Lyon v. Adgraphics, Inc., 14 Conn. App. 252, 255
(Conn.App.Ct. 1988) quoting LE Wertheimer, Inc. v.Wehle-Hartford Co., 126 Conn. 30, 35 (1939).
An enforceable agreement may be created by a confirmation notice. Silvilla v. Phillips Medical Systems, 46 Conn. App. 669
(Conn.App.Ct. 1997). In Silvilla, the court held that a valid and enforceable agreement was created after St. Mary's Hospital sent the defendant a confirmation notice subsequent to receiving a purchase order, and thereafter, accepted the goods, in accordance with the agreement. Id. In an analogous situation, another Superior court found that when the purchase order had been timely accepted with a written notice, a binding agreement CT Page 13466 was created. Saturn Construction v. U.S. Concrete, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 91-0702238, 5 CONN. L. RPTR. 394 (January 6, 1992, Schaller, J.). "It is undisputed that the . . . purchase order . . . was an offer . . ." and "a written confirmation" is a "definite and seasonal expression of acceptance." Id.
Thus, in this case the parties entered into a contract in Connecticut. Because the offer, in the form of a purchase order, was sent to Connecticut and because the acceptance portion of the contract was issued from Connecticut, the contract was created in Connecticut. Therefore, this court concludes that under the long-arm statute this court may entertain jurisdiction because the plaintiff's cause of action arises out of a contract made in this state.
2. Contract Was Performed in Connecticut
In addition to finding that this contract was made in Connecticut, this court finds that it was to be and was performed in Connecticut. "The phrase `to be performed in this state' does not require performance in this state by the party over whom jurisdiction is sought." Litterbug v. McCann Real EquitiesDevelopment, Superior Court, judicial district of New Haven at New Haven, Docket No. 950379974 (February 21, 1996, Freedman, J.), citing Bowman v. Grolsche Bierbrouwerij, BV 474 F. Sup. 725,731-32 (D. Conn., 1979). Rather, the underlying contract must contemplate or encompass some contact with Connecticut.Gamelstaden PLC v. Lindholm, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 130058 (February 28, 1996, Karazin, J.). Thus, the plaintiff makes its prima facie case by showing that a contract existed and that it was to be performed in Connecticut. Id.
In this case Connecticut was the location for performance by the plaintiff. Pursuant to the contract the plaintiff located the goods from Connecticut, purchased the goods from Connecticut, and tracked the goods from Connecticut. The plaintiff also issued the invoice from Connecticut. The defendant urges the court to accept the proposition that because the goods at issue in the contract were not ever located in Connecticut, the contract was not performed in Connecticut. This court finds that because the plaintiff performed all of its obligations under the agreement in the state of Connecticut, the statutory requirement of in-state performance for personal jurisdiction is met. CT Page 13467
C. Constitutional Requirement of Due Process
The defendant argues that even if it finds that a valid contract was entered into by the parties in Connecticut, this court may not entertain jurisdiction because the plaintiff has failed to show that the "cause of action arose out of the defendant's transaction of business in this state." Defendant'sMemorandum in Support of Its Motion to Dismiss. The plaintiff contends that when the court examines the attendant circumstances surrounding the contract it will conclude that there is sufficient contact between the defendant and the state to justify exercising jurisdiction.
In order for this court to assert jurisdiction over the defendant it must find that the defendant has minimum contact with Connecticut and that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice.Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486,79 L.Ed.2d 804 (1984); Milliken v. Meyer, 311 U.S. 457, 463,61 S.Ct. 339, 342, 85 L.Ed.2d 278 (1940); and Chaiken v. VV. Pub.Corp. , 119 F.3d 1018, 1027 (2nd Cir. 1997). "The due process test for personal jurisdiction has two related components: the `minimum contacts' inquiry and the `reasonableness' inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. See International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)."Metropolitan Life Ins. Co. v. Robertson-Ceco Corp. , 84 F.3d 560,567 (2nd Cir. 1996).
1. Minimum Contacts
In determining whether minimum contacts exist, the court must consider "the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770,775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). This determination is not made through "mechanical or quantitative evaluation . . . but rather through a qualitative examination of [the defendant's relationship with the forum and the litigation]". Combustion Engineering, Inc. v. NEI InternationalCombustion, Ltd., 798 F. Sup. 100, 104 (D. Conn. 1992). "A plaintiff need only prove that a defendant could have reasonably anticipated being haled into court . . . in Connecticut . . ."Thomason v. Chemical Bank, 234 Conn. 281, 296 (1995). The due CT Page 13468 process analysis is one which considers that totality of the circumstances. World-Wide Volkswagen Corp. v. Woodson,444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
The plaintiff claims that the fact that all of its activities took place in Connecticut, and the fact that the parties engaged in substantially identical transactions nine prior times are crucial and central to the court's determination of whether the defendant has sufficient contact with the state to meet the constitutional standard. This court agrees.
Other facts that this court considers relevant to the determination are the following. The defendant had knowledge from the nine prior transactions that it was contracting with a Connecticut company which would perform its tasks in Connecticut. The defendant, on prior occasions, had sent payments and correspondence to Connecticut in connection with the business agreement. See Charlup v. Omnicorp Holdings, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 91121184 (August 24, 1993, Nigro) (The fact that defendant sent faxes, made telephone calls, sent paychecks and correspondence to Connecticut supported finding of jurisdiction). Though the defendant never came to Connecticut, it hired a Connecticut company to do a nationwide search for it, the entirety of which would be conducted from Connecticut. SalisburyGroup v. Alban Institute, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 960070036 (July 3, 1996, Pickett, J., 1996 WL 39762) (Minimum contacts requirements were met when the plaintiff was hired by a defendant foreign corporation which never came to Connecticut, to do a nationwide search, which the plaintiff did, primarily, from Connecticut.) Finally, the defendant contracted with the plaintiff to perform services which would be conducted in Connecticut. Litterbug, Inc.v. McCann Real Equities Development Co., supra (February 21, 1996, Freedman, J.) (Defendant, a foreign corporation contracted with the plaintiff to clean and sweep property in New Haven, Connecticut and then refused to pay for services rendered: this was found to be sufficient to justify the exercise personal jurisdiction over the defendant.)
The court in Coutinho Caro Co. v. Doolan encountered a factual pattern similar to the one presented in this case when it considered the question of what constitutes "minimum contacts". Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 960149433 (August 13, 1996, Arnold, J., 1996 CT Page 13469 Ct. Sup. 5256). That court concluded that because the defendant entered a series of contracts with the plaintiff, contracts which foresaw continued contracts; because the defendant was sending purchase orders and payments to Connecticut to the plaintiff; and because the defendant was communicating with the plaintiff Connecticut corporation, the defendant could be haled into court. In Coutinho, the defendant's President had also traveled to Connecticut to meet with representatives of the plaintiff company. Though this fact is dissimilar to the ones presented in the instant case, the totality of circumstances in the Coutinho
case is sufficiently similar to the circumstances in the instant case to support a similar finding of jurisdiction after applying the minimum contacts test.
The plaintiff has established by sufficient evidence that the constitutional requirement of minimum contacts for the assertion of personal jurisdiction has been met.
2. Fairness Consideration
Finally, before a court may exercise jurisdiction, it must determine that to do so is fair. Though the defendant does not explicitly articulate the argument that it would be unfair and unjust to haul it into a Connecticut court, the argument is implicit in the defendant's brief. Fairness is another constitutional consideration for the court. "Once the plaintiff has established that minimum contacts exist, the burden of proof shifts to the defendant who then must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Combustion Eng'g, Inc. v. NEIInternational Combustion, Ltd., supra citing Burger King Corp. v.Rudezewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184-5,86 L.Ed.2d 528 (1985).
"Whether it is reasonable to exercise jurisdiction in a particular case depends on (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interests in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Chaiken v. VV Pub. Corp. , supra.
The defendant has not met its burden of presenting CT Page 13470 "compelling" evidence that the exercise of jurisdiction in this case would be unreasonable. Nor has it provided this court with sufficient factual support for its implicit claim that it would be unduly inconvenienced by defending itself in a Connecticut court. It has not addressed the various factors which the court must weigh in order to determine the issue of fairness. Therefore, this court, absent evidence to the contrary, concludes that it would be fair to exercise jurisdiction over the defendant in this case.
III CONCLUSION
The plaintiff has provided sufficient support for this court to conclude that a contract was entered into by the plaintiff and the defendant in Connecticut and that plaintiff's performance pursuant to the contract took place in Connecticut. Further, the defendant has minimum contacts with the state. And, finally, the defendant has failed to meet its burden of showing the requisite unfairness that would allow this court to decline to exercise jurisdiction. For all of these reasons, defendant's Motion to Dismiss is denied.
ANGELA CAROL ROBINSON JUDGE, SUPERIOR COURT