[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Stuart Products, d.b.a. Tri-Cab, filed a two count complaint on January 12, 1999. alleging breach of contract against two defendants. The complaint alleges the following facts. Tri-Cab is a Connecticut corporation that has its principal place of business in West Haven, Connecticut. One of the defendants is Connecticut Plywood, Inc., a Connecticut corporation that has its principal place of business in West Hartford, Connecticut. The other defendant is Enviro Finishing of Indiana, Inc., which has its principal place of business in Richmond, Indiana. Tri-Cab received a purchase order to build and install custom cherry wood cabinets at the Stamford Sheraton Hotel. Tri-Cab contracted with Connecticut Plywood to furnish cherry wood for the project. Connecticut Plywood contracted with Enviro to supply the stain and finish the wood. Tri-Cab rejected Enviro's finishing work because the color of the stain did not meet specifications. Tri-Cab claims that Connecticut Plywood breached its contract with Tri-Cab (count one), and that Enviro breached its contract with Connecticut Plywood, to which Tri-Cab is a CT Page 11404 third party beneficiary (count two). Tri-Cab claims it incurred money damages because the cost to supply labor and replacement materials for the cabinets was more than the price originally agreed upon in the Tri-Cab-Connecticut Plywood contract.
On June 8, 1999, Enviro filed a motion to dismiss the second count of Tri-Cab's complaint on the ground that the court lacks personal jurisdiction over Enviro because neither Connecticut's long-arm statute, nor the due process clause confer jurisdiction, and because Tri-Cab mis-named Enviro as "Enviro Finishing, Inc.," instead of its name according to the secretary of state of Indiana, "Enviro Finishing of Indiana, Inc." As required by Practice Book § 10-31, Enviro has filed a memorandum, in support of its motion to dismiss, and an affidavit. Tri-Cab has timely filed a memorandum in opposition with affidavits and supporting documents. Enviro has filed a second motion to dismiss a cross-claim by Connecticut Plywood, but this second motion is not before this court.
A motion to dismiss is the proper vehicle by which to assert a lack of jurisdiction over the person. See Practice Book § 10-31(a)(2); see also Shay v. Rossi, 253 Conn. 134, 140 n. 8, ___ A.2d ___ (2000). "When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial count must specifications. Tri-Cab claims that Connecticut Plywood breached its contract with Tri-Cab (count one), and that Enviro breached its contract with Connecticut Plywood, to which Tri-Cab is a third party beneficiary (count two). Tri-Cab claims it incurred money damages because the cost to supply labor and replacement materials for the cabinets was more than the price originally agreed upon in the Tri-Cab-Connecticut Plywood contract.
On June 8, 1999, Enviro filed a motion to dismiss the second count of Tri-Cab's complaint on the ground that the court lacks personal jurisdiction over Enviro because neither Connecticut's long-arm statute, nor the due process clause confer jurisdiction, and because Tri-Cab mis-named Enviro as "Enviro Finishing, Inc.," instead of its name according to the secretary of state of Indiana, "Enviro Finishing of Indiana, Inc. As required by Practice Book § 10-31, Enviro has filed a memorandum, in support of its motion to dismiss, and an affidavit. Tri-Cab has timely filed a memorandum in opposition with affidavits and supporting documents. Enviro has filed a second motion to dismiss a cross-claim by Connecticut Plywood, but this second motion is not before this court.
A motion to dismiss is the proper vehicle by which to assert a lack of jurisdiction over the person. See Practice Book § 10-31(a)(2); see also Shay v. Rossi, 253 Conn. 134, 140 n. 8, ___ A.2d ___ (2000). "When a CT Page 11405 defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction oven the [defendant] would violate constitutional principles of due process." (Brackets in original; internal quotation marks omitted.) Knipple v. Viking Communications,236 Conn. 602, 606, 674 A.2d 426 (1996). Enviro argues that neither part of this test is satisfied.
 I
Tri-Cab contends the requirements of Connecticut's long-arm statute, § 33-1219 (f), are met. The section states: "Every foreign corporation shall be subject to suit in this in this state, by a resident of this state on by a person having a usual place of business in this state, whether or not such foreign corporation is conducting or has conducted affairs in this state and whether or not it is engaged exclusively in interstate or foreign commence, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any solicitation in this state by mail or otherwise if the corporation has repeatedly so solicited, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." General Statutes § 33-1219 (f).
Tri-Cab alleges: (1) the cause of action arises out of a contract both "made" and "performed" in Connecticut; (2) the cause of action arises out of the production, manufacture or distribution of goods with the reasonable expectation that such goods were to be, and in fact were, shipped to Connecticut; (3) the defendant Enviro repeatedly solicited sales in Connecticut; and (4) it is foreseeable and fair for the defendant Enviro to be sued in Connecticut. The statute requires one cause of action. "[I]n enacting § 33-411 (c) [the predecessor to § 33-1219 (f)] . . . the legislature intended to exercise its full constitutional power over foreign corporations in cases falling within one of the designated causes of action." (Internal quotation marks omitted.) Thomason v. Chemical Bank, 234 Conn. 281, 291, 661 A.2d 595
(1995). CT Page 11406
Because Tri-Cab's contract is with Connecticut Plywood, not with Enviro, Tri-Cab relies on a third party beneficiary relationship with Enviro to establish personal jurisdiction on a cause of action arising out of a contract both "made" and "performed" in Connecticut. Neither party submitted a copy of the contract for the court's review. Tri-Cab, however, has met its burden on other grounds, because it has provided evidence that Enviro's wood was to be "used or consumed in this state." General Statutes § 33-1219 (f)(3). Tri-Cab's affidavit of Stuart Danin, president and owner of Tri-Cab, states that the raw cherry wood was shipped from Connecticut to the defendant Enviro in Indiana. (Tri-Cab's memorandum of law, Exh. A.) After Enviro finished the wood, it shipped the wood back to Connecticut where Tri-Cab was to assemble and install the wood cabinets. (Id.) Enviro's affidavit of Douglas Ullery, secretary of Enviro, acknowledges Enviro received wood products from Connecticut and states that the owner of the wood product is responsible for the shipment of the product to and from Enviro. (Enviro's memorandum of law, Exh. A.) That the owner bears the responsibility for shipping the wood does not negate Enviro's "reasonable expectation that such goods are to be used or consumed in this "state." Thus, § 33-1219 (f)(3) reaches the defendant because of Enviro's dealings with Tri-Cab.
 II
The second part of the inquiry involves a due process analysis. "The due process clause of the fourteenth amendment to the United States constitution operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants." Panganiban v. Panganiban, 54 Conn. App. 634, 638, 736 A.2d 190
(1999), cent. denied, 251 Conn. 920, 742 A.2d 359 (1999), citing Shafferv. Heitner, 433 U.S. 186, 198-200, 97 S.Ct. 2569, 54 L.Ed.2d 683 (1977). "The United States Supreme Court has held that the test to be applied in considering the reach of personal jurisdiction is whether (1) the nonresident panty has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state, and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice. AsahiMetal Industry Co. v. Superior Court, 480 U.S. 102, 111-12,107 S.Ct. 1026,94 L.Ed.2d 92 (1987); Burger King Corp. v. Rudzewicz, [471 U.S. 462,475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1984)]; Hanson v. Denckla,357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). As long as it creates a substantial connection with the forum state, even a single act can support jurisdiction. McGee v. International Life Ins. Co.,355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)." (Internal quotation marks omitted). Panganiban v. Panganiban, supra, CT Page 1140754 Conn. App. 639.
First we look to whether Tri-Cab has met its burden in determining the first part of the constitutional test, which is known as the "minimum contacts" test. "Either "specific' jurisdiction or "general' jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum. A state court will have "specific' jurisdiction over a nonresident defendant whenever the defendant "has "purposefully directed" [its] activities at residents of the forum, Keetonv. Hustler Magzine, Inc., 465 U.S. 770, 774 [104 S.Ct. 1473,79 L.Ed.2d 790] (1984), and the litigation [has] result[ed] from alleged injuries that "arise out of or relate to" those activities, HelicopterosNacionales de Colombia, S. A. v. Hall, [466 U.S. 408, 414,104 S.Ct. 1868,80 L.Ed.2d 404, 414 (1984)].' Burger King Corp. v. Rudzewicz,
[supra, 471 U.S. 472-73]. Alternatively, "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction' if the defendant has had "continuous and systematic general business contacts' with the state. . . .Helicopteros Nacionales de Colombia, S. A. v. Hall, supra, 414, 416." (Emphasis in original; internal quotation marks omitted.) Thomason v.Chemical Bank, supra, 234 Conn. 287-88.
In its memorandum of law, Tri-Cab points to several allegations and factual statements to support its contention that the defendant Enviro had established minimum contacts in Connecticut: (1) Enviro entered into a contract to finish goods to be delivered to Connecticut and the plaintiff was a third party beneficiary of that contract; (2) Enviro's representative made numerous telephone calls and sent faxes and product samples to the plaintiff in Connecticut; (3) Enviro placed goods in interstate commerce for ultimate delivery to Connecticut; and (4) Enviro solicited and conducted prior business in Connecticut. (Tri-Cab's memorandum of law, pp. 11-12.)
Tri-Cab alleges that it has a third party beneficiary relationship with Enviro, but Enviro provided evidence in the Ullery affidavit that Enviro did not intend such a relationship. (Enviro's memorandum of law, Exh. A.) The intent of the contracting parties (Enviro and Connecticut Plywood) is fundamental to determining whether Tri-Cab is a third party beneficiary. "[T]he intent of both parties to a contract determines whether a third party has contract rights as a third party beneficiary." Grigerik v.Sharpe, 247 Conn. 293, 310, 721 A.2d 526 (1998), on remand,56 Conn. App. 314, 742 A.2d 434, cent, denied, 252 Conn. 936, 747 A.2d 2
(2000). "The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a CT Page 11408 contract is entitled to know the scope of his or her obligations thereunder. That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties . . . is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee." Id., 312.
Unless the contract between Connecticut Plywood and Enviro contains express language that reveals Tri-Cab has a third party relationship, the court will require more facts on this issue. "[A]lthough ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court." (Internal quotation marks omitted.) Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 807, 695 A.2d 1010
(1997). "The construction of a contract is usually a question of fact because the interpretation of its language is a search for the intent of the parties, making contractual intent a classic question of fact." Foleyv. Huntington Co., 42 Conn. App. 712, 730, 682 A.2d 1026 (1996), cert. denied, 239 Conn. 931, 683, A.2d 397 (1997). "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) Unisys Corp. v. Dept. of Labor,220 Conn. 689, 695-96, 600 A.2d 1019 (1991).
Tri-Cab also argues that past communication with Enviro will help Tri-Cab in meeting the minimum contacts test. In Danin's affidavit, Tri-Cab provides evidence that Enviro made telephone calls, sent facsimile transmissions, and furnished the defendant with product samples. (Tri-Cab's memorandum of law, Exh. A.) The affidavit lists six telephone conversations between Danin and representatives of Enviro in Richmond, Indiana, but does not mention which party initiated these calls. (Id.) An appendix to Tri-Cab's memorandum includes a fourteen-page facsimile from Danin to representatives of Enviro. (Tri-Cab's memorandum of law, Exh. B.) Danin's affidavit also states that he sent a sample of the finish color for the cabinets to Robert Livesay of Enviro on May 8, 1988, and later that month, or in early June, received a color sample from Enviro. (Tri-Cab's memorandum of law, Exh. A.) In support of this evidence, Tri-Cab cites numerous cases in which Connecticut courts have held that communications sent by a defendant to a plaintiff in Connecticut are relevant contacts for the purpose of meeting the minimum contacts requirement. In each of these cases, the communications were one of several factors the court considered, in all the cited cases that applied Connecticut law, there was a contract between the defendant and the plaintiff. See, e.g., Electric-Cable Assemblies, Inc. v. UNI-SourceCT Page 11409Office Furniture Parts, Inc., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 052609 (July 11, 1997, Flynn, J.,
1997) (WL 408726); Coutinho Caro Co. v. Doolan Ind., Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 149433 (August 13, 1996, Arnold, J.); The Salisbury Group, Inc. v. AlbanInstitute, Inc., Superior Court, judicial district of Litchfield at Litchfield, Docket No. 070036 (July 3, 1996, Pickett, J.); Charlup v.Omniconp Holdings, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 121184 (August 24, 1993, Nigro,J.).
Tri-Cab alleges that Enviro placed goods in interstate commerce for ultimate delivery to Connecticut. Danin's affidavit states that the raw cherry wood that was to be used for the cabinets was loaded on a truck in Meriden, Connecticut and was shipped to Enviro in Richmond, Indiana for finishing. (Tri-Cab's memorandum of law, Exh. A.) It also states that on June 24, 1988, Enviro trucked the finished wood from Richmond, Indiana to Tri-Cab in West Haven, Connecticut. (Id.) In its memorandum of law in support of the motion to dismiss, Enviro contends the shipment of pre-finished wood by the owner to Enviro and the return shipment of the finished wood by the owner to Connecticut are "inconsequential at best." (Enviro's memorandum of law, p. 6.) Enviro provides evidence, in the Ullery affidavit, that the owner of the wood arranges for its delivery to the final destination. (Enviro's memorandum of law, Exh. A.)
Tri-Cab also provides evidence, in the affidavit of Charles Dionisio, president of Connecticut Plywood, that Enviro solicited business in Connecticut and had prior transactions with Connecticut Plywood. (Tri-Cab's memorandum of law, Exh. B.) The affidavit states that Enviro solicited business in Connecticut beginning in 1995 "using the Hardwood Plywood directory as a source for potential contacts and clients." (Id.) According to the affidavit, Enviro sent Connecticut Plywood an unsolicited form letter and flyer (attached to the affidavit) in 1995 and continued to send flyers to Connecticut Plywood, as well as other Connecticut companies in solicitation of new business. (Id.) The affidavit further states that Enviro has done business with Connecticut Plywood for more than one year. (Id.) Enviro provides conflicting evidence, in the Ullery affidavit, that "Enviro does not directly solicit orders or business within the State of Connecticut." (Enviro's memorandum of law, Exh. A.) Given the strength of Tri-Cab's evidence, particularly the 1995 individualized solicitation letter from Enviro to Connecticut Plywood, Tri-Cab has proven that Enviro solicited business in Connecticut.
Tri-Cab's four contacts to meet its burden of establishing minimum contacts are: (1) a third party beneficiary (contractual) relationship CT Page 11410 with the Enviro; (2) communication from Enviro to Tri-Cab; (3) Enviro's placement of goods in interstate commerce for ultimate delivery to Connecticut; and (4) Enviro's solicitation of business in Connecticut. None of these contacts meet the requirements of "general" jurisdiction, which requires systematic overall business contacts. Individually, the communication from Enviro to Tri-Cab and Enviro's placement of goods in interstate commerce appear too tenuous to meet the minimum contacts test. Enviro's solicitation of business in Connecticut constitutes a causal connection to Tri-Cab's injuries and satisfies the requirements of "specific" jurisdiction.[1]
"The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice — that is, whether it is reasonable under the circumstances of the particular case. . . . The Supreme Court has held that the court must evaluate the following factors as part of this reasonableness analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." (Internal quotation marks omitted.) Panganiban v.Panganiban, supra, 54 Conn. App. 640, quoting Metropolitan Life Ins. v.Robertson-CECO Corp., 84 F.3d 560, 567-68 (2d Cir.), cert. denied,519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996); Chew v. Dietrich,143 F.3d 24 (2d Cir. 1998).
"Once the plaintiff has established that minimum contacts exist, the burden of proof shifts to the defendant who then must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' Combustion [Engineering], Inc. v. NEIinternational Combusion, Ltd., [798 F. Sup. 100, 106 (D. Conn. 1992)], citing Burger King Corp. v. Rudzewicz, [supra, 471 U.S. 477]." Thornton Co., Inc. v. Pennsak, Inc., Superior Court, judicial district of New Britain, Docket No. 490607 (November 20, 1998, Robinson, J.) (23 Conn. L. Rptr. 532, 535). Enviro alleges, "Enviro's activities were so remote and insignificant with respect to Connecticut that being haled into court here, far from being a "reasonably anticipate(d)' eventuality, is offensive to notions of fair play and substantial justice." (Enviro's memorandum of law, p. 6). The Ullery affidavit states Enviro accepted a total of eight orders from Connecticut in 1998 and no orders in 1999, and that these orders were an insubstantial portion of Enviro's gross sales (1.7 percent in 1998 and 0 percent in 1999). (Enviro's memorandum of law, Exh. A.) Despite the small contribution of Connecticut sales to Enviro's overall revenue, Enviro was aware these products were to be CT Page 11411 delivered and "consumed" in Connecticut, giving Enviro the reasonable expectation it could be hauled to court here. Further, the defendant has failed to address the various factors set forth by the U.S. Supreme Court, which this court must weigh to determine the issue of fairness. Therefore this court concludes it is fair to exercise personal jurisdiction over Enviro in this case.
 III
The complaint named Enviro as "Enviro Finishing, Inc." and Enviro's name is "Enviro Finishing of Indiana, Inc." Enviro moves to dismiss on the ground that the plaintiff failed to name Enviro correctly and has "simply brought suit against a nonexistent" party. (Enviro's memorandum of law, p. 6.)
"An improperly executed writ or citation does not . . . affect the subject matter jurisdiction of the trial court. As a defect in having the court acquire personal jurisdiction over the defendant, an improperly executed [writ] may be waived by the defendant . . . A defendant may contest the personal jurisdiction of the court even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. Practice Book § 142 [now (1998 rev.) § 10-30]." (Internal quotation marks omitted.) Brunswickv. Inland Wetlands Commission, 222 Conn. 541, 551, 610 A.2d 1260, on remand, 29 Conn. App. 634, 617 A.2d 466 (1992).
The defendant's conclusion that the misnomer amounts to improper service is, however, incorrect. "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court." General Statutes § 52-123. One type of circumstantial error is a misnomer. "A misnomer must be distinguished from a case in which the plaintiff has misconstrued the identity of the defendant, rather than the legal nature of his existence. . . . When the correct party is designated in a way that may be inaccurate but which is still sufficient for identification purposes, the misdesignation is a misnomer. Such a misnomer does not prevent the exercise of subject matter jurisdiction if the defendant was actually served and knew he or she was the intended defendant." (Internal quotation marks omitted.) AndoverLtd. Partnership I v. Board of Tax Review, 232 Conn. 392, 398, 655 A.2d 759
(1995). "This is in contradistinction to the case in which the plaintiff has misconstrued the identity of the defendant and has therefore named and served the wrong party." Lussier v. Dept. of Transportation,228 Conn. 343, 350, 636 A.2d 808 (1994). CT Page 11412
The Supreme Court of Connecticut applied a three-part test to determine whether the misdescription is a misnomer and, therefore, a circumstantial error. See Pack v. Burns, 212 Conn. 381, 385, 562 A.2d 24 (1989). The court considered three factors. "They are that the proper party defendant (1) have actual notice of the institution of the action; (2) knew that it was the proper defendant in the action, and (3) was not in any way misled to its prejudice." (Internal quotation marks omitted.) Pack v. Burns,
supra, 212 Conn. 385. Using the test, the error in naming Enviro Finishing, Inc., rather than Enviro Finishing of Indiana, Inc., is a misnomer that amounts to circumstantial error. Enviro's appearance in this suit is evidence of actual notice. Enviro claims that it was not served properly; service was proper under General Statutes § 33-663
(b), and Enviro chose to refuse service. (Sheriff's supp. return.) Enviro admitted in paragraph one of its memorandum of law that "service of process was effected upon "Enviro Finishing, Inc.'" (Enviro's motion to dismiss, p. 1.) As indicated from its filed appearance and the facts and allegations in its motion to dismiss and supporting documents, Enviro is aware it is the intended party. Enviro makes no claim it has been misled to its prejudice.
The misnomer is a defect in the "text of the writ itself" and §52-123 exists to "provide relief from [such] defects." See Pack v.Burns, supra, 212 Conn. 386. This court permits Tri-Cab to amend its pleadings to properly name Enviro. "A trial court has broad discretion to allow an amendment to pleadings before, during, or even after trial in order to conform to the proof." (Internal quotation marks omitted.)Gionfriddo v. Carter-Howe Development Corp., 27 Conn. App. 706, 712, 609 A.2d (1992).
For the foregoing reasons this court concludes it has personal jurisdiction over the defendant Enviro because the injury suffered by Tri-Cab arises out of Enviro's solicitation of business in Connecticut.
Howard F. Zoarski Judge Trial Referee