ROXANNA PANGANIBAN *v.* ALAN PANGANIBAN
(AC 18072)

Spear, Sullivan and Stoughton, Js.

Argued February 18—officially released August 31, 1999

*Thomas D. Colin*, with whom, on the brief, was *Samuel V. Schoonmaker III*, for the appellant (defendant).

*Stephen E. Reck*, with whom, on the brief, was *Arnold H. Klau*, for the appellee (plaintiff).

*Opinion*

SPEAR, J. The defendant, Alan Panganiban, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Roxanna Panganiban, awarding alimony to the plaintiff, ordering the defendant to obtain certain life insurance policies and awarding attorney's fees to the plaintiff. He claims that the trial court improperly (1) exercised personal jurisdiction over him pursuant to General Statutes § 46b-46 without the prerequisite showing of minimum contacts with Connecticut and, alternatively, if the court had personal jurisdiction, it abused its discretion in making the award of alimony, (2) ordered him to obtain and maintain life insurance without any evidence of insurability, availability or cost of such insurance and (3) awarded attorney's fees to the plaintiff in the amount of $3500. We reverse the judgment with respect to the life insurance and the amount of attorney's fees and affirm the judgment in all other respects.

The plaintiff commenced the present action in May, 1996, seeking, inter alia, a dissolution of the parties' marriage, alimony and counsel fees. Counsel for the defendant appeared and timely moved to dismiss those portions of the complaint that sought financial orders on the ground that the trial court lacked in personam jurisdiction over the defendant. The trial court concluded that § 46b-46 (b) was not unconstitutional as

applied to the defendant in this case because the defendant had sufficient contacts with Connecticut to justify the exercise of personal jurisdiction; accordingly, the trial court denied the motion to dismiss.

A hearing on the dissolution action was held before the trial court on November 12, 1997. The plaintiff, her counsel and the defendant's attorney were present, but the defendant did not appear. The trial court made the following findings of fact with respect to the defendant's contacts with Connecticut.[1]

The parties were married on April 7, 1979, in New London. At the time of the marriage, the defendant was unemployed and was receiving public assistance. The defendant was out of work during most of the time that he resided in Connecticut after the marriage and was continuously unemployed from April, 1981, to sometime in 1985. The defendant frequently received public assistance from the date of the marriage through March, 1985, when he left Connecticut.

One child was born of the marriage on May 23, 1981. Prior to the defendant's departure from Connecticut, the parties filed joint tax returns as Connecticut residents, enrolled the child in the public school system and maintained bank accounts in this state. After the defendant left Connecticut in 1985, the plaintiff and the child required public assistance.

The plaintiff saw the defendant when he visited members of his family in Connecticut and unsuccessfully sought support from him when she saw him in 1986 and 1989. Prior to instituting this action, the plaintiff last saw the defendant in Connecticut at his mother's funeral in 1989. The plaintiff had no contact with the

---

[1] The dissolution court adopted the factual findings of the trial court that ruled on the defendant's motion to dismiss. The facts set out here include the findings of both courts on this issue.

defendant from 1989 until this action was commenced in 1996.

In September, 1992, the defendant won $16,000,000 in the Delaware Powerball lottery.[2] Pursuant to the lottery rules, the defendant receives annual installments of $800,000 each year until the $16,000,000 is paid. The plaintiff learned about the defendant's good fortune after a note was left at her son's school in which the defendant requested that the plaintiff contact him.

Due to limited financial resources, the plaintiff was unable to commence a dissolution action until May, 1996. During the separation of the parties, the plaintiff never represented to the defendant that she had obtained a divorce.

The trial court dissolved the marriage, awarded sole custody of the minor child to the plaintiff,[3] awarded alimony in the amount of $6000 per month to the plaintiff for a term of ten years, ordered the defendant to secure the alimony award with an insurance policy in the amount of $360,000[4] and allowed counsel fees of $3500. This appeal followed.

I

A

The defendant first claims that the trial court improperly included financial orders in the dissolution judgment without personal jurisdiction over him in violation

[2] The dissolution court stated that the defendant won the Maryland lottery in September, 1993. The state and year appear to be typographical errors as the defendant asserted, and Judge Hurley earlier found, that the defendant won the Delaware lottery in September, 1992.

[3] The parties previously had agreed to a support order for the minor child of $1000 per month by way of a consent decree in Maryland. The trial court did not disturb that order, but ordered the defendant to secure the order with a $200,000 life insurance policy.

[4] This order was entered because the defendant was involved in litigation in Maryland to determine whether he had to share his winnings with certain other persons who claimed an interest in the winning ticket.

of his constitutional right to due process. Our inquiry with respect to jurisdiction is twofold. First, the requirements of § 46b-46[5] must be satisfied. Second, the exercise of personal jurisdiction must comport with the well established principles of due process. The defendant concedes that the requirements of § 46b-46 are satisfied. We conclude that the trial court properly denied the motion to dismiss because the defendant did have sufficient contact with Connecticut and the exercise of jurisdiction in this case does not offend the traditional notions of fair play and substantial justice.

The due process clause of the fourteenth amendment to the United States constitution operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. *Shaffer* v. *Heitner*, 433 U.S. 186, 198–200, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). " 'The due process clause protects an individual's liberty interest in not being subject

[5] General Statutes (Rev. to 1997) § 46b-46 provides: "(a) On a complaint for dissolution, annulment, legal separation or custody, if the defendant resides out of or is absent from the state or the whereabouts of the defendant is unknown to the plaintiff, any judge or clerk of the Supreme Court or of the Superior Court may make such order of notice as he deems reasonable. After notice has been given and proved to the court, the court may hear the complaint if it finds that the defendant has actually received notice that the complaint is pending. If it does not appear that the defendant has had such notice, the court may hear the case, or, if it sees cause, order such further notice to be given as it deems reasonable and continue the complaint until the order is complied with. Nothing in this section shall be construed to affect the jurisdictional requirements of chapter 815o in a complaint for custody.

"(b) The court may exercise personal jurisdiction over the nonresident party as to all matters concerning temporary or permanent alimony or support of children, only if: (1) The nonresident party has received actual notice under subsection (a) of this section; and (2) the party requesting alimony or support of children meets the residency requirement of section 46b-44."

The statute was amended to remove the requirement that both parties be domiciled in Connecticut on or about the time of the separation. The amendment became effective on January 1, 1996, and the amended version as set out above is applicable to this case.

to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp.* v. *Rudzewicz,* 471 U.S. 462, 471–72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1984). The United States Supreme Court has held that the test to be applied in considering the reach of personal jurisdiction is whether (1) the nonresident party has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state, and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice. *Asahi Metal Industry Co.* v. *Superior Court,* 480 U.S. 102, 111–12, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); *Burger King Corp.* v. *Rudzewicz,* supra, 475–76; *Hanson* v. *Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). As long as it creates a substantial connection with the forum state, even a single act can support jurisdiction. *McGee* v. *International Life Ins. Co.,* 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957).' *Cashman* v. *Cashman,* 41 Conn. App. 382, 389, 676 A.2d 427 (1996)." *Tri-State Tank Corp.* v. *Higganum Heating, Inc.,* 45 Conn. App. 798, 802–803, 699 A.2d 201 (1997).

"The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. . . . For purposes of this initial inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction. Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum

state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. . . . The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of the particular case. . . . The Supreme Court has held that the court must evaluate the following factors as part of this reasonableness analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." (Citations omitted; internal quotation marks omitted.) *Metropolitan Life Ins.* v. *Robertson-CECO Corp.*, 84 F.3d 560, 567–68 (2d Cir.), cert. denied, 519 U.S. 1006, 117 S. Ct. 508, 136 L. Ed. 2d 398 (1996); see also *Chew* v. *Dietrich*, 143 F.3d 24 (2d Cir. 1998).

The defendant's contacts with Connecticut prior to leaving were substantial and certainly give rise to specific jurisdiction. The financial orders arise out of the dissolution of a marriage that was entered into in this state, and Connecticut is the place where the defendant conducted the daily activities of his marital life, took advantage of the benefits and protections of this state and had his marital home. Therefore, the trial court properly concluded that the defendant had sufficient contact with Connecticut to justify the exercise of personal jurisdiction over him.

Turning to the reasonableness of exercising jurisdiction over the defendant, we consider the five factors set out in *Metropolitan Life Ins.* v. *Robertson-CECO Corp.*, supra, 84 F.3d 567–68. It is clear that the court's

exercise of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. First, there is nothing in the record that indicates that an undue burden was placed on the defendant with respect to his traveling to Connecticut. He was represented by counsel at all times and we presume that he would have hired counsel if the action had been brought in Maryland. Second, Connecticut had a great interest in adjudicating the marital status of these parties, who had lived in the state for many years and had received public assistance. With respect to the third factor, the plaintiff had an obvious interest in obtaining convenient and effective relief through the state courts of her resident state of Connecticut. Factors four and five also support the exercise of personal jurisdiction in Connecticut. It is more efficient to resolve all of the marital issues in one forum in Connecticut than to have the marital res acted upon in Connecticut while the plaintiff sought support for herself through the interstate support process.[6] All states share a social policy interest in the support of the families resident within their borders and Connecticut has a particular and substantial interest in the support of the plaintiff, who has in the past had to rely on the public fisc for support.

We conclude that it is unquestionably reasonable for this state to hale the defendant into court with respect to financial obligations related to his marriage. To hold otherwise would mean that once a married person left the state, no Connecticut court could exercise in personam jurisdiction over that person in a dissolution action brought by the spouse left behind if the departing spouse had no contact with Connecticut between the time of departure and the time that the dissolution

---

[6] See Uniform Interstate Family Support Act, General Statutes § 46b-212 et seq.

action was brought. Such a bizarre result is not warranted under the circumstances of this case. The trial court correctly concluded that the defendant's contact with Connecticut was sufficient to justify the exercise of personal jurisdiction over him and that the exercise of such jurisdiction was reasonable and comported with traditional notions of fair play and substantial justice.

## B

The defendant claims that even if the trial court properly exercised jurisdiction, it abused its discretion in awarding the plaintiff time limited alimony in the amount of $6000 per month. We disagree.

This court has held that "[e]very reasonable presumption must be given to support the correctness of the trial court's judgment. . . . Decision making in family matters requires flexible, individualized adjudication of the particular facts of each case. . . . It is well established that trial courts have a distinct advantage over appellate courts in dealing with domestic relations where all of the surrounding circumstances and the appearance and attitude of the parties are so significant. . . . In family cases, a trial court is vested with broad discretion. . . . Appellate review of the exercise of that discretion is limited to determining (1) whether the trial court correctly applied the law and (2) whether the trial court could reasonably have concluded as it did. . . . This court may not substitute its own opinion for the factual findings of the trial court." (Citations omitted.) *Grimmeisen* v. *Grimmeisen,* 37 Conn. App. 545, 545–46, 657 A.2d 237 (1995).

The defendant, in essence, complains that the alimony award is far above anything to which the plaintiff had been accustomed, based on her station in life and standard of living. We have stated that "[i]t is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's

determination as to what is a proper order." *Misiorski* v. *Misiorski*, 11 Conn. App. 463, 469, 528 A.2d 829 (1987). We conclude that the trial court did not abuse its discretion in its award of time limited alimony of $6000 per month.

## II

The defendant challenges the trial court's order that directs the defendant to maintain two life insurance policies in the respective amounts of $200,000 and $360,000. The plaintiff agrees with the defendant that the trial court exceeded its authority as neither party introduced evidence at trial as to the cost of such insurance or of the defendant's insurability. See *Wolf* v. *Wolf*, 39 Conn. App. 162, 172, 664 A.2d 315 (1995); *Michel* v. *Michel*, 31 Conn. App. 338, 341, 624 A.2d 914 (1993). The plaintiff consents to the trial court's striking the insurance orders, and the defendant agreed at oral argument that a reversal on the insurance issue would not necessitate a new hearing on the other financial issues. Under these circumstances, vacating the orders is appropriate.

## III

The defendant last claims that the trial court improperly awarded counsel fees in the amount of $3500 without prior notice or evidence of the reasonableness of the fees charged. We find that the trial court properly found that the defendant was liable for attorney's fees, but improperly awarded a dollar amount without sufficient facts before it.

The plaintiff requested an allowance to prosecute in her complaint and that claim for relief put the defendant on notice of her claim for attorney's fees. Therefore, the defendant's claim of lack of notice is without merit.

"[General Statutes §] 46b-62 provides that, after inquiring into the parties' respective financial abilities,

a trial court may award 'reasonable attorney's fees' to either spouse. . . . This reasonableness requirement balances the needs of the obligee spouse with the obligor spouse's right to be protected from excessive fee awards. See *Hartford Electric Light Co.* v. *Tucker*, 183 Conn. 85, 91, 438 A.2d 828, cert. denied, 454 U.S. 837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981)." *Dobozy* v. *Dobozy*, 241 Conn. 490, 500, 697 A.2d 1117 (1997). " 'Courts have a general knowledge of what would be a reasonable attorney's fee for services which are *fairly stated and described.' Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982). '[C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues.' *Bizzoco* v. *Chinitz*, 193 Conn. 304, 310–11, 476 A.2d 572 (1984)." (Emphasis added.) *Miller* v. *Kirshner*, 225 Conn. 185, 201, 621 A.2d 1326 (1993). "While the decision as to the liability for payment of such fees can be made 'in the absence of any evidence of the cost of the work performed'; *Kenny* v. *Civil Service Commission*, 197 Conn. 270, 278, 496 A.2d 956 (1985); the dollar amount of such an award must be determined to be reasonable after an appropriate evidentiary showing." *Costa* v. *Costa*, 11 Conn. App. 74, 77–78, 526 A.2d 4 (1987). It is precisely because this showing is lacking that we are required to reverse the award of attorney's fees and remand for a hearing.

The judgment is reversed as to the order requiring the defendant to obtain life insurance in the respective amounts of $200,000 and $360,000 and as to the award of attorney's fees and the case is remanded with direction to vacate the life insurance order and for further proceedings consistent with this opinion on the issue

of attorney's fees. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.