[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S PENDENTE LITE MOTIONS TO DISMISS (Nos. 102 and 107)
I. PROCEDURAL HISTORY
Before the court are the defendant's pendente lite motions to dismiss (Nos. 102 and 107) the plaintiff's complaints for lack of personal jurisdiction.
The plaintiff commenced an action by writ, summons and CT Page 13980 complaint against the defendant seeking a dissolution of marriage and related relief. This action, the plaintiff's first, was returnable to the court on March 9, 1999. Service of process was made on the defendant in Hong Kong by means of an order of notice. The action was returned to court and Docket No. FA99 0170802 was assigned.
The defendant filed a motion to dismiss plaintiff's complaint for lack of personal jurisdiction (No. 102). More specifically, the defendant moved that those portions of the complaint seeking "economic relief, i.e., alimony, child support, property distribution, counsel fees, etc., be dismissed for lack of personal jurisdiction over the Defendant, as the Defendant has insufficient `minimum contacts' with the State of Connecticut to satisfy constitutional due process."
Prior to an evidentiary hearing on this motion, the plaintiff commenced a second action, identical to the first, against the defendant. This second action was made returnable to the court on June 1, 1999. Docket No. FA99 0172125 was assigned. This second action was served personally on the defendant, in Connecticut, on May 11, 1999. The defendant filed a motion to dismiss plaintiffs second complaint (No. 107). The grounds for the dismissal are identical to the grounds in the first motion, together with an additional claim that plaintiff's "prior pending action" bars her prosecution of the second action, and that defendant could not be served when in Connecticut on May 11.
The defendant moved to consolidate both actions, which motion was granted. The court conducted an evidentiary hearing on both motions to dismiss, on May 14, 1999.
II. FACTS
This court finds the following facts based upon its review of the record and the evidentiary hearing.
At most of the times mentioned herein, both the plaintiff and defendant were employed overseas. The plaintiff has been employed by the investment firm of Smith Barney (now Solomon Smith Barney) and the defendant by the law firm of Baker MacKenzie. The parties have a minor child, Mina, born September 17, 1991. Mina was born in India, after probably having been conceived in Tokyo, Japan. The parties married on October 1, 1991 in Tokyo. CT Page 13981
The defendant has never resided in the State of Connecticut. Since early 1992, he has resided outside the United States. Since approximately October, 1993, the defendant has resided in Hong Kong.
The plaintiff, defendant and Mina initially resided together in Hong Kong. Sometime prior to August, 1998, the plaintiff and defendant separated, and the plaintiff and Mina went to live in Tokyo. In August, 1998, the plaintiff and Mina relocated to the United States because of the plaintiff's employment circumstances. The defendant did not consent to the move. At some time not long thereafter, the plaintiff and Mina moved to Greenwich, Connecticut, where they presently live.
There was evidence concerning the parties', more particularly the defendant's, contacts with and within the State of Connecticut. In approximately 1991 or 1992, apparently sometime after Mina's birth and the parties' marriage, the parties did make some effort to look at homes in Greenwich. The evidence was inconclusive as to whether or not the parties submitted any bids; there was certainly no purchase. The defendant's only other contacts with the State of Connecticut were in 1998 and 1999. After the plaintiff and Mina relocated to the United States, and later Connecticut, in mid-1998, over the defendant's objection, visitation between the defendant and Mina became obviously problematic. The defendant came to the United States, and Connecticut, in or about July or August, 1998, and together with the plaintiff looked at homes to purchase. In point of fact, the defendant completed a mortgage application in an apparent effort to prequalify for a home should they find the right one. Any efforts to find a home fell apart as a result of the parties' disagreement over the town in which to live. The plaintiff favored Greenwich, but the defendant did not because of the high cost of buying a home to their mutual liking in that town. Notwithstanding this, the defendant did have visitation with Mina for several days around Thanksgiving and the Christmas holidays in 1998.
After the plaintiff commenced her first action, the parties entered into a stipulation, in April, 1999 and approved by the court, for the defendant's visitation with Nina. The defendant returned to the United States, and to Connecticut, in May, 1999 to exercise this visitation. At the beginning of May, the defendant picked up Nina in Greenwich and the two went to Utah to see the defendant's son (by a prior relationship) graduate from CT Page 13982 school. The defendant and Nina returned to Greenwich and stayed at a local hotel on or about May 10, 1999. On May 11, the defendant's intention was to return Nina to the plaintiff, and then remain available for the hearing on defendant's motion to dismiss, scheduled for May 14. On May 11, the plaintiff went to the defendant's hotel, asked the defendant to come down to the lobby with some of her personal belongings, and then, as the defendant did so, he was personally served with process in the hotel lobby. This was service of the aforementioned second action. When the defendant inquired of the plaintiff as to what had just transpired, the plaintiff essentially said this service was part of her attorney's "strategy".
At all times mentioned, the defendant has been a United States citizen, but not a resident of any particular state, including the State of Connecticut. Further, at all times mentioned, the defendant has never had any contacts with the State of Connecticut prevalent among many of its residents. He has not had a driver's license here, had a bank account here, or owned real property in the State of Connecticut.
III. LAW
C.G.S. § 46b-46 (b) curtails the superior court's jurisdiction over non-resident parties. Alimony and support may not be assessed against a non-resident party unless such party has both received actual notice under subsection (a), and the party requesting such financial support meets the residency requirements of. § 46b-44.
Notwithstanding this allowance, the assertion of personal jurisdiction against a non-resident must still comply with federal constitutional requirements of due process, and must be evaluated according to the so-called "minimum contacts" test. SeeCato v. Cato, 27 Conn. App. 142, 147-48 fn. 6 (1992), affirmed,226 Conn. 1 (1993). The inquiry commonly running through those cases which have had cause to apply the minimum contacts test, is whether the non-resident has "purposefully availed himself of the benefits of [Connecticut] laws," St. Hilaire v. St. Hilaire,41 Conn. Sup. 429, 430, 437 (1990), such that the non-resident could reasonably and fairly be expected to be haled into court here. St. Hilaire, supra, at 435.
In Panganabin v. Panganabin, 54 Conn. App. 634 (1999), the Connecticut Appellate Court stated that: CT Page 13983
 "The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the reasonableness" inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. . . . The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice that is, whether is reasonable under the circumstances of the particular case . . ." Panganabin, 54 Conn. App. at 639-640, quoting Metropolitan Life Ins. v. Robertson-CECO Corp. , 84 F.3d 560, 567-68 (2d Cir.), cert. denied, 519 U.S. 1006 (1996).
"Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. . . . Panganabin, supra, at 639. This court cannot find that the defendant's contacts with Connecticut were of the quantity or quality that gives rise to "specific" jurisdiction. Here, the defendant had only fleeting contacts with Connecticut in 1991 and 1992. Moreover, although defendant's contacts with Connecticut were slightly more significant in 1998 and 1999, this court does not believe that they can be used as the predicate for specific jurisdiction over the defendant. This is because these later contacts were for apparent purposes of first, family reunification and purchase of a home, which never occurred, and second, for exercising visitation with Nina. As such, Kulko v.California Superior Court, 436 U.S. 84 (1978) is dispositive on this point. Further, the case relied upon the plaintiff, Burnhamv. Superior Court of California, 495 U.S. 604 (1990) is not on point. In Burnham, it was noteworthy there that the non-resident defendant was in the forum state for both business and visitation purposes. Burnham, supra, at 608. That is not the situation in the instant case.
Also, the plaintiff claims that the Uniform Interstate Family Support Act, (UIFSA) C.G.S. § 46b-212 et seq. supports jurisdiction over the defendant. UIFSA addresses a court's jurisdiction to enter support orders against non-residents. However, § 46b-212d clearly defines the seven enumerated bases for the assertion of jurisdiction against a non-resident regarding support orders. None are applicable in the instant case. While personally serving the non-resident with process CT Page 13984 while within this State is a basis for jurisdiction under UIFSA, personal service was effected not in the first action, but only in the second. Moreover, as to the second action, this court does not believe that personal service was valid. This court does not necessarily go so far as to agree with the defendant's claim that personal service on the defendant, on May 11, 1999, was done by fraud or deception. Service was, certainly, at least opportunistic. However, the defendant was in Connecticut on May 11 for only two related reasons. First, the defendant was exercising visitation with the minor child. For the reasons previously discussed, the court finds that it would be nonsensical not to approve of service for "minimum contacts" purposes, but to allow for it under UIFSA. Second, the defendant was in Connecticut awaiting a court hearing only three days hence. A non-resident is not subject to service of process while attending the trial of an action in which he is the defendant.Ryan v. Ebecke, 102 Conn. 12 (1925); see also Murphy v.Dantowitz, 142 Conn. 320 (1955). Such is the case here. To hold otherwise would deprive the defendant, with an opportunity to enter the state to defend against plaintiff's claims.
In sum, the inquiry for purposes of deciding defendant's present motions is not whether he may have obligations to his spouse, the plaintiff, and does have obligations to his minor child. If that were the inquiry, the answers might well be different. The inquiry is whether the defendant has sufficient "minimum contacts" with Connecticut that this state can exercise specific jurisdiction over him. Here, any jurisdictional contacts which the defendant has with this state are of the plaintiff's sole creation, not the defendant's. As such, defendant's motions to dismiss should be granted.
CONCLUSION
For the foregoing reasons, defendant's motions to dismiss are granted in part, as follows:
Those portions of the plaintiff's complaint and prayers for relief seeking in personam relief against the defendant are dismissed. Pinder v. Pinder, 42 Conn. App. 254, 260 (1996).
So Ordered.
KAVANEWSKY, J. CT Page 13985