CELIA ZAHRINGER *v.* GEORGE J. ZAHRINGER
(AC 20687)

Schaller, Pellegrino and Dupont, Js.

Argued November 1, 2001—officially released April 23, 2002

*Wesley W. Horton*, with whom were *Samuel V. Schoonmaker IV* and, on the brief, *Thomas D. Colin* and *Samuel V. Schoonmaker III*, for the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, George J. Zahringer, appeals from the judgment of the trial court modifying the unallocated alimony and child support award that he was ordered to pay at the time of the dissolution of the marriage of the parties. On appeal, the defendant claims that the court improperly (1) refused to consider financial contributions to the plaintiff, Celia Zahringer, from her parents, (2) ordered an increase of alimony

that raised the plaintiff well above her standard of living at the time of the dissolution, and (3) ordered arrearage payments at the rate of 75 percent of the new unallocated alimony and support award. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. The parties' marriage of almost fourteen years was dissolved on August 28, 1995. Prior to the dissolution, three children were born of the marriage. The judgment of dissolution incorporated by reference the terms of a separation agreement (agreement), also signed and dated August 28, 1995. Article III, paragraph 3.3 of the agreement states in relevant part that "[c]ommencing January 15, 1996 for the month of January 1996, the [defendant] shall pay to the [plaintiff] the sum of $25,000 per month as unallocated alimony and child support, said order shall be non-modifiable as to amount through December 1998." Article III, paragraph 3.5 further states in relevant part that "either party may petition the Court for a review of the monthly unallocated alimony and support payment at any time after January 1, 1999. The Court shall at that time consider the totality of the financial circumstances of the parties and by application of the criteria set forth in Connecticut General Statute Section 46b-82 determine whether the then existing unallocated alimony and support award should continue unmodified, should be increased, or should be reduced. Any modification shall be made retroactive to January 1, 1999."

On April 8, 1999, the plaintiff filed a motion for modification of the existing unallocated alimony and support award. In her motion, the plaintiff represented that the defendant currently had a substantially greater disposable income than he did at the time of the judgment dissolving the marriage. The plaintiff also asserted in the motion that the cost of the children's various activities had increased substantially given their change in

age since the time of the judgment. A hearing on the plaintiff's motion took place on December 8, 9 and 10, 1999.

On March 24, 2000, the court rendered a decision on the plaintiff's motion for modification. The court found that at the time of the dissolution the defendant's annual income was $1,339,503. The court also found that the defendant's current income at the time of the hearing was $2,227,000. The court stated that this increase was a substantial change in the financial circumstances of the defendant.[1] The court then applied the criteria set forth in § 46b-82.

The court found that although many of the § 46b-82 factors had not changed, "[t]he children are older, their needs have changed and their educational requirements have increased." In addition, the court noted other expenses the plaintiff listed on her financial affidavit relating to the children. On the basis of its findings, the court ordered the defendant "to pay the sum of $50,000 monthly to the plaintiff as unallocated alimony and child support, effective as of January 1, 1999, pursuant to paragraph 3.5 of the parties' separation agreement." Because the new order was to be retroactive and, as a result, created an arrearage, the court ordered that the arrearage be paid in monthly installments of $37,500 until paid in full, commencing April 15, 2000. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly refused to consider contributions to the plaintiff by her

---

[1] According to the agreement and General Statutes § 46b-86 (a), that finding was necessary before the court could modify the award. Section 46b-86 (a) provides in relevant part that "any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

parents. That claim actually is comprised of two claims, both of which relate to the agreement. First, the defendant claims that the court improperly applied § 46b-82. Second, the defendant claims that the court failed to base its decision on the total financial circumstances of the parties as also required by the agreement.

A

The defendant first argues that the court improperly failed to consider contributions made to the plaintiff by her parents because § 46b-82 requires the court to take such contributions into account. Specifically, the defendant makes two arguments. First, he maintains that the contributions qualify as income. Second, he contends that § 46b-82 requires the court to consider the income of both the payor and payee when fashioning a new award.

The following additional facts are necessary for our resolution of this claim. During the December, 1999 hearing, the defendant introduced evidence that the plaintiff had been regularly receiving financial contributions from her parents in the form of access to a joint checking account. The defendant offered evidence consisting of ninety-eight pages of documentation, which contained copies of three checks per page that were drawn on this checking account. The defendant's purpose was to demonstrate that the plaintiff had access to her parents' funds, both for her use and for the children's needs. The plaintiff's financial affidavit disclosed that she had made expenditures of approximately $230,000 in this manner.

During the hearing, however, the plaintiff testified that she had *borrowed* this money from her father because the amount of money she received at that time did not meet the needs of the children and herself in order to live the way they had always lived. The plaintiff further testified that her financial affidavit represented

this substantial debt to her father as a liability. During cross-examination, the defendant's counsel elicited testimony from the plaintiff that the debts owed to her father were in the nature of demand loans. The defendant's counsel, however, never requested that the plaintiff produce the loan documents.

In its memorandum of decision, the court discussed that evidence and the defendant's assertion that the court must consider those contributions. It noted the defendant's reliance on *Unkelbach* v. *McNary*, 244 Conn. 350, 710 A.2d 717 (1998), for the proposition that the court must consider such contributions when setting a new order. The court, however, distinguished that case, stating that "[i]n *Unkelbach* as in *McGuinness* v. *McGuinness*, 185 Conn. 7, 440 A.2d 804 (1981), it is the payor's ability that is enhanced by the companion's income or the current spouse's income." The court concluded that it "has no case declaring that the payor should benefit from the largesse of the payee's parents."

The defendant argues that the court's decision was improper on two levels. First, he argues that the court was incorrect in failing to find that the contributions were income to the plaintiff. Second, in response to what the defendant maintains is an inequitable treatment of payors and payees by the court, he contends that § 46b-82 requires the court to consider the income of both the payor and payee, as opposed to just the payor, when fashioning a new award. Therefore, the defendant asserts that the court properly must construe that money as income and consider the plaintiff's access to it when applying § 46b-82.

Because the defendant has failed to provide us with an adequate record, we decline to review his claim. As we often have stated: "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford

review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Citations omitted; internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, 61 Conn. App. 162, 164, 763 A.2d 669 (2000).

We are not able to review the claim in the present case because the court did not make a specific finding as to the nature of the access the plaintiff maintained with respect to her parents' bank account. Rather, in response to the defendant's argument that the court must consider that source in setting the new order, the memorandum of decision states only that "[t]he court has no case declaring that the payor should benefit from the largesse of the payee's parents."

In the context of this case and in light of the parties' contentions regarding those contributions, the court's use of the term "largesse" in its decision is unclear. In addition, each of the parties offers a plausible explanation. The defendant argues that the money the plaintiff received from her parents' bank account was in the nature of a gift from her parents. Therefore, he maintains that the court's use of "largesse" simply refers to those gifts. In contrast, the plaintiff states that the money she received constituted two unsecured loans, as described in her financial affidavit. Consistent with that assertion, she maintains that the court's use of "largesse" refers to its recognition of the parents' generosity in extending $230,000 in unsecured loans to their daughter.

A determination of whether those contributions were gifts or loans is pivotal to our resolution of the defen-

dant's claim. As our case law states, contributions in the form of gifts properly may be considered in setting financial orders. See *Rubin* v. *Rubin*, 204 Conn. 224, 238–39, 527 A.2d 1184 (1987). Contributions that are loans, and mandate repayment, however, are liabilities that are not considered to be assets. See *Schmidt* v. *Schmidt*, 180 Conn. 184, 188, 429 A.2d 470 (1980). We will not speculate as what the court meant by "largesse." As we often have stated: "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Internal quotation marks omitted.) *Fitzgerald* v. *Fitzgerald*, supra, 61 Conn. App. 163. Because we do not know what the court considered the contributions to be, we cannot properly review the defendant's claim that the contributions qualify as income.

Because we cannot discern whether the court considered the contributions in question to be gifts or loans, we also are unable to review the defendant's second argument that the court was obligated to consider the payee's income under § 46b-82 in fashioning the new order.

B

The defendant also argues that the court failed to base its decision on the total financial circumstances of the parties, as required by the agreement, because it did not consider the contributions made to the plaintiff by her parents when making its decision. Specifically, the defendant maintains that the "court failed to consider the totality of the parties' financial circumstances because it refused to consider financial contributions to the plaintiff by her parents."

The defendant bases this claim on the terms of the parties' agreement. He asserts that regardless of whether the court found the contributions from the plaintiff's parents to be gifts or loans, it was obligated

to take that money into account because the agreement, in addition to requiring the application of § 46b-82, also required the court to "consider the totality of the financial circumstances of the parties" in determining whether to modify the award. Although we agree with the defendant that the agreement must be treated as a contract that governs the modification; see *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 595, 602 A.2d 1056 (1992); we also decline to review his claim because he has not provided an adequate record for review. See *Fitzgerald* v. *Fitzgerald*, supra, 61 Conn. App. 163–64.

Although the defendant baldly asserts that the court "refused to consider" the contributions from the plaintiff's parents, he has not provided us with a record that discloses exactly what the court in fact considered. Therefore, notwithstanding the confusion surrounding the court's use of the term "largesse," the defendant has failed to provide any indication that the court did or did not consider it.

Additionally, we do not interpret the court's discussion of the law relied on by the defendant, its distinction of that law in the present case or its statement about precedent regarding the payor's benefiting from the "largesse" of the payee's parents as a conclusion by the court that it refused to consider the contributions. Rather, the three sentences in the memorandum of decision that form the hub of controversy in the present case simply are inadequate to illuminate the court's factual findings or conclusions of law.

Because the court did not state what it considered in its decision and because the defendant failed to obtain any articulation of that decision, we do not know what the court took account of when modifying the award. In the absence of such findings, we decline to review the defendant's claim that the court did not consider the contributions. See id.

## II

The defendant next claims that the court's modification decision was improper because it ordered an increase of alimony that raised the plaintiff well above her standard of living at the time of the dissolution. The defendant further argues that the court's decision ordered a second property division because the modification gave the plaintiff a drastic increase in alimony and support. We do not agree.

We first note the applicable standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . .

"[I]n determining [whether there has been an abuse of discretion] the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached." (Citation omitted; internal quotation marks omitted.) *Stewart* v. *Stewart*, 57 Conn. App. 335, 337, 748 A.2d 376, cert. denied, 253 Conn. 918, 755 A.2d 216 (2000).

The present claim is similar to the defendant's argument in *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 736 A.2d 190, cert. denied, 251 Conn. 920, 742 A.2d 359 (1999). In *Panganiban*, the defendant claimed that the

court's initial alimony award was "far above anything to which the plaintiff had been accustomed, based on her station in life and standard of living." Id., 642. In concluding that the trial court did not abuse its discretion by setting this award, we stated that "[i]t is hornbook law that what a spouse can afford to pay for support and alimony is a material consideration in the court's determination as to what is a proper order." (Internal quotation marks omitted.) Id., 642–43.

Guided by that maxim and by our standard of review, we must determine whether the court reasonably could have concluded as it did in the present case. The memorandum of decision relates that the court found the defendant's income went from $1,339,503 at the time of the dissolution to $2,227,000. The court also noted that the parties' children had grown, and that their needs and educational requirements changed. The court further found that the plaintiff's total monthly expenses, as stated in her financial affidavit, amount to $50,541.21. The court ordered the defendant to pay the plaintiff $50,000 each month.

In light of those findings, we conclude that the court reasonably could have made the determination it did in the present case. The defendant enjoys a robust income that, since the dissolution, has grown substantially. Moreover, the award virtually mirrors the amount that the plaintiff claims she expends on a monthly basis. That indicates to us that, on the basis of the evidence and testimony the court heard, the court was persuaded by the plaintiff that she required the increase to provide for herself and the children. Given our standard of review and the great weight given to trial court decisions in domestic cases, we will not consider whether a conclusion different from the court's could have been reached. We conclude that the court did not abuse its discretion in setting the new order.

Because we have determined that the court did not abuse its discretion in setting the modified order, we need not review the defendant's related contention that the court's decision was essentially an improper, clandestine second property division because the modification gave the plaintiff a drastically increased award.

## III

The defendant last claims that the court improperly ordered arrearage payments at the rate of 75 percent of the new unallocated alimony and support award. Although the defendant asserts that this is "grossly excessive" and an abuse of discretion, we decline to review his claim because he has not adequately briefed the necessary facts and applicable law.

In his brief, the defendant cites only to *Unkelbach* v. *McNary*, supra, 244 Conn. 350, as support for his argument that the court improperly set the arrearage in the present case. The defendant notes that the *Unkelbach* court determined that it was improper for the trial court to set an arrearage order that was above the presumptive value in the child support guidelines and not explain the deviation. We construe the defendant's brief to argue, by implication only, that *Unkelbach* applies to the present case because he states further that the court in the present case set an order that required payments at 75 percent of the new order and offered no explanation for that assignment.

In *Unkelbach*, however, the order at issue involved only child support. Id., 351–55. *Unkelbach* therefore is factually dissimilar to the present case, which involves an unallocated alimony and support order. The defendant has provided no legal authority or analysis relating how a child support order case is applicable to a case involving an unallocated order for alimony and support.

Though the defendant seems to assert that the child support guidelines for arrearage apply to this case by

his reliance on *Unkelbach*, he has not provided any statutory or regulatory authority or citation regarding the guidelines. Our statutes and regulations in that area, however, explicate specific legal and procedural standards that a court must adhere to when setting such orders. Before we properly can address a claim such as the defendant's, those sections must be presented to us and applied to the case at hand.

The defendant also has failed to illuminate with any legal authority how, if at all, the child support guidelines apply to an unallocated order for alimony and support. In addition, the defendant has failed to furnish us with any documentation that indicates the guidelines were even applicable in this case in the first instance or how they were deviated from if they were applied.[2]

Last, we note the possibility that the defendant is arguing, by analogy to the guidelines, that the court abused its discretion in setting the arrearage because the order was inconsistent with the presumptive arrearage values established in the guidelines. The defendant's brief, however, even fails to clarify that the defendant is, in fact, arguing an abuse of discretion by analogy to the guidelines. Moreover, even if that should be the case, the defendant has failed to inform us of any legal authority that states that the court's discretion in setting an arrearage for unallocated alimony and support orders is measured, governed or even tempered by the guidelines. Nor has the defendant presented any argument that this should be the case.

"We are not required to review issues that have been improperly presented to this court through an inade-

---

[2] We note in addition, that at oral argument before this court, counsel for the defendant twice stated that this is not a guidelines case. Although the first statement was not made in the context of argument on this specific claim, the second statement was made squarely in a discussion of this claim. We find those comments telling in our disposition of the claim.

quate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *In re Kachainy C.*, 67 Conn. App. 401, 413, 787 A.2d 592 (2001). Because the defendant has failed to adequately brief the issue, we will not afford it review.

The judgment is affirmed.

In this opinion PELLEGRINO, J., concurred.

DUPONT, J., dissenting. I respectfully dissent. According to the majority, the basic reason to affirm the judgment of the modification of unallocated alimony and child support is that the record is inadequate to determine whether the trial court, in its use of the word "largesse" in its memorandum of decision, had concluded that the $230,000 received by the plaintiff ex-wife from her parents was a gift or a loan. In my opinion, the memorandum of the trial court does not indicate that it viewed that issue as dispositive. Instead, the court viewed the issue as being whether the plaintiff ex-wife was obligated to pay support or was to receive it. Given the posture of this case on appeal, I view the dispositive issue as being whether the trial court improperly, as a matter of law, interpreted existing case law and statutes.[1]

The record is adequate to review this issue because the construction of statutes and case law involve questions of law for which our review is plenary. I would conclude that this case involves a question of law that should be resolved in favor of the defendant based on existing case law and General Statutes §§ 46b-82 and

---

[1] I would not reach the issues discussed by the majority relating to whether the trial court abused its discretion in setting the dollar amount of the modification or the arrearage because those amounts are dependent upon whether the $230,000 should be considered in setting them.

46b-86. I would, therefore, reverse the judgment of the court and remand the case for a new hearing at which the court should treat the sums received by the plaintiff from her parents in the same way as it would if the plaintiff were the ex-spouse obligated to pay support instead of the ex-spouse who was to receive support.

The trial court's memorandum, in its relevant portion, states as follows: "The defendant introduced ninety-eight pages containing copies of three checks per page, of a checking account . . . to demonstrate that the plaintiff had access to her parents' funds for her use and the children's needs. The defendant cites *Unkelbach* v. *McNary*, 244 Conn. 350, 710 A.2d 717 (1998), for the proposition that this court must consider such source in setting the new order. In *Unkelbach*, as in *McGuinness* v. *McGuinness*, 185 Conn. 7, 440 A.2d 804 (1981), it is the payor's ability that is enhanced by the companion's income or the current spouse's income. The court has no case declaring that the payor should benefit from the largesse of the payee's parents. The defendant is ordered to pay the sum of $50,000 monthly to the plaintiff as unallocated alimony and child support . . . ."

I do not interpret the trial court's words as ambiguous. Its order immediately follows its interpretation of *Unkelbach*, which is based on the court's conclusion that *Unkelbach*'s holding is inapplicable if it is a payee's income that is enhanced. The receipt of the money by the plaintiff, as a payee of the defendant's support obligation, therefore, according to the court, need not be considered. In other words, whether the word "largesse" was a finding of a gift would be irrelevant, in the court's view, because the plaintiff received the sums as the payee rather than the payor of the support obligation.[2]

---

[2] In my opinion, the court used the word "largesse" because it viewed the sums received by the plaintiff to be in the nature of the classic dictionary definition, namely, "a liberal giving" or a "generous gift." Based on the facts

There is nothing in §§ 46b-82 and 46b-86 or in the cases cited by the trial court to indicate that there is a legal distinction between the ex-spouse who pays support and the ex-spouse who receives support. In either case, the totality of the financial circumstances of both parties must be considered. Section 3.5 of the parties' separation agreement also provides that both parties' financial circumstances must be considered.

*Unkelbach* involved a defendant whose support obligations were modified because of the contributions to his income made by a domestic partner, which affected his present ability to pay child support. The case, however, is not limited to payors or to fact situations involving child support guidelines. It cites with approval those cases which, in setting financial orders, allow the consideration of payments made regularly and consistently to one of the ex-spouses. See *Anderson* v. *Anderson*, 191 Conn. 46, 55–57, 463 A.2d 578 (1983); *McGuinness* v. *McGuinness*, supra, 185 Conn. 12–13.

Section 46b-82 provides that the court may order either of the parties to pay alimony to the other. Section 46b-86 speaks to the alteration or modification of alimony or support upon a showing of a substantial change

submitted at the hearing on the motion to modify, the court could readily have found the $230,000 received by the plaintiff was a gift. The financial affidavit of the plaintiff dated February, 1999, did not list the sum as a loan or the subject of a promissory note or notes; a subsequent affidavit dated December 9, 1999, and submitted during the hearing held on December 8, 9 and 10, 1999, did list the amount as a loan. The checks were written by the plaintiff, in varying amounts for various reasons, and all were signed by the plaintiff. One of the checks dated November 10, 1998, was payable to the plaintiff in the amount of $18,000. That check and many others predated the plaintiff's financial affidavit of February, 1999, which did not list any sums from the parents as a loan. The plaintiff testified that the sums were loans and that there were two promissory notes to evidence those loans. No notes were introduced by her in evidence, and the defendant did not seek their production. The trial court could have concluded that it was the plaintiff's burden to prove that the $230,000 was a loan, rather than the defendant's burden to disprove it.

in the circumstances of either party. I could find no statute within chapter 815j of the General Statutes entitled "Dissolution of Marriage, Legal Separation and Annulment" that makes the distinction that the trial court did.

Accordingly, I would reverse the judgment and remand the matter for further proceedings.