[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The eighteen-year marriage of the parties was dissolved by decree of this court on April 14, 1998, at an uncontested hearing at which time a Separation Agreement of even date therewith was approved and incorporated therein. The relevant portion of that agreement to this inquiry is found in Article Two. Specifically, Article 2.1 provides that the husband is obligated to pay time-limited alimony for approximately nine years, initially at the rate of $10,000 per month, stepping down to $8,333.33 commencing May 1, 2001 for the remainder of the term, which period is nonmodifiable by the wife. However, Article 2.2 provides that the amount is modifiable by either party, and specifically, downward by the husband in the event of the loss of his employment, health problems, or other substantial change of circumstances. At the time of the entry of the CT Page 10160 decree, the marital assets were divided 55% to 45% in favor of the wife. The matter comes before this court by way of a post-judgment Motion for Modification by the plaintiff husband ("husband") dated December 27, 2000 (#123.01) and a Motion for Contempt by the defendant wife ("wife") dated February 22, 2001 (#125 and #125.10). In addition, the wife seeks counsel fees and costs. The case in chief was presented over the course of three days.
The husband is 57 years old and suffers from some serious health problems, in particular, congestive heart failure. During the marriage he had open heart surgery in 1982, however, over time, the situation has worsened. He is on medication, and testified that his ability to work full-time is severely limited. However, given the events of September 11, 2001, he is working longer hours than expected. He offered testimony regarding the circumstances of his termination from his longterm employment (a job which he held at the time of the dissolution), for which he has consulted with counsel concerning the possibility of an age-discrimination suit. He was advised that the statute of limitations had not yet run, and that he has not yet instituted such an action. He offered compelling testimony from a cardiologist, Sanford Friedman, M.D., by way of a videotape deposition. He currently earns $75,000 per annum, which is approximately one-fifth of his previous salary. In addition, he receives approximately $40,000 to $45,000 per year from Bass Associates, a real estate partnership with his brother. The husband has reduced his alimony payments to his wife to a sum roughly equal to 30% of his earned income. He has since remarried. His present spouse owns and maintains at her expense an apartment in New York City where the husband testified that he stays two or three nights per week.
For her part, the wife does not seriously contest the involuntariness of the husband's job termination or the state of his health. On the contrary, she points to his other sources of income, including a real estate partnership with his brother and the trusts set up under the will of his late mother, both of which she argues are available to meet his current alimony obligation. On the other hand, the husband argues that the trust was shown on his financial affidavit at the time of the divorce and was not treated as part of the marital property subject to equitable distribution.
The wife is 54 years old and in generally good health. At the time of their marriage, she had been a fine silver appraiser for Sotheby's in Los Angeles and New York, where she was a vice president and earned $35,000 per annum together with the use of a company car. At some point during the marriage she formed a business with Andrews Kelly called Kelly Bass, Inc., a consulting and appraisal firm concentrating in the area of fine and decorative arts. The firm was only moderately successful. and the CT Page 10161 last significant monies she received therefrom was $1,384.00 in 1999, which sum was a residual due from an appraisal performed for the Estate of Alys Litchfield some time before. She has not worked since. She described herself as "out of touch" and "basically retired" with no intention of returning to work. When pressed about returning to her former profession, she demurred, basing her choice on her concerns about professional liability. The court does not find this to be entirely credible. In fact, the court believes that she feels "cheated" in that she bargained with the husband for time-limited alimony in return for a substantial property settlement and large alimony, with the idea that using the income from her investments, she would be entirely self-sufficient at age 59 when the alimony stopped. For his part, the husband charges that the wife has a demonstrable earning capacity to supplement her investment income, and, moreover, that he should not have to bear the burden for her choice to invest in real estate as opposed to greater income generating assets. The wife countered with the argument that she has had to liquidate a portion of her investment portfolio in order to meet the shortfall in her living expenses.
 LAW
The standard to be applied by the court in its determination to modify an existing court order is whether or not there been substantial change of circumstances since the date of the last order. Sanchione v.Sanchione, 173 Conn. 397, 408 (1977), Sardilli v. Sardilli,16 Conn. App. 114, 119 (1988), and Noce v. Noce, 181 Conn. 145 (1980). In order to make such a determination, the court must look to the overall financial picture of both parties, applying the statutory factors set forth in General Statutes §§ 46b-82 and 46b-84. Zahringer v.Zahringer, 69 Conn. App. 251, 266 (2002) (Dissenting opinion of Dupont, J.). That while the court must consider the statutory factors set forth in Section 46b-82 C.G.S., it "may also consider any other factors which may be appropriate for a just and equitable resolution." Borkowski v.Borkowski, 228 Conn. 729, 743-44 (1994). In any event, in reaching it's decision, the court should be guided by equity which is the "keystone" to the court's ability to fashion relief in the "infinite variety of circumstances" which arise in the context of a matrimonial action.Sunbury v. Sunbury, 13 Conn. App. 651 (1988).
Where, as here, a separation agreement has been incorporated into the judgment, it is construed as a contract. Greenburg v. Greenburg,26 Conn. App. 591, 595 (1992); Barnard v. Barnard, 214 Conn. 99, 109
(1990). However, the court cannot change the terms of the contract even if they are inconvenient or unreasonable. Greenburg, supra 598.
At the heart of this case are the trusts established for the benefit of CT Page 10162 the husband under the will of his late mother Roslyn M. Bass, December 28, 1988. The evidence before the court, including the will and various tax returns for the trust, names the husband, his brother, and an independent party as trustees, with the proviso that the husband has no power to vote for an invasion of principal or for a distribution, both of which decisions are at the sole discretion of the remaining trustees. In other words, it is a classic spendthrift trust, established by a non-party to the action. The evidence also clearly shows that the husband has never asked for nor has he ever requested an invasion of the principal or a distribution of income, this in spite of his health and the change of his financial circumstances. Frustrating to the wife is the fact that the trust generates considerable income, and the sole, primary beneficiary is the husband, who has no issue. He does however possess a limited power to appoint by his will, but in the absence of such action the corpus devolves to his brother (who also has no issue), if living, and if not, then to charity.
The issue of whether or not the income or corpus of a trust is available for equitable distribution or for the payment of alimony was discussed at length in the case of Tremaine v. Tremaine, 235 Conn. 45
(1995). In its simplest terms, the court must look to the facts and circumstances to determine whether or not the party has actual control. This is not to say, however, that under the facts and circumstances of a given case, a trust instrument lacks any value whatsoever which could be considered by the court in determining the net worth of a party. A court may consider the nature of the power to appoint if any. In brief, where a party has the power to appoint without reservation, it is called a general power. It is considered an asset, and a monetary value can be assigned to it. However, where there are limitations placed upon the ability to appoint, such as to creditors, the power is considered a limited or nongeneral one and is not treated as an asset. In fact, a former spouse is considered a judgment creditor. Cooley v. Cooley, 32 Conn. App. 152,167-69 (1993). Such is the case with the Roslyn Bass trusts. On the other hand, any future income or other benefit that the husband actually receives from the trust can play a part in the court's decision regarding an appropriate level of alimony. Tremaine, supra 66.
In general, an award of attorneys fees in a family matter is within the discretion of the court based upon a review of the financial ability of each party. Section 46b-62 C.G.S. The Connecticut Supreme Court has held that such an award must be based upon a finding by the court that there are ample liquid assets with which to make the payment. Koizim v.Koizim, 181 Conn. 492, 500-01 (1980). However, where the parties have agreed to the payment of reasonable attorneys fees and costs in the event of a breach by one of them, then the court may order the payment of same without consideration of their respective financial abilities. In such a CT Page 10163 case, the court must first determine whether or not a breach has occurred, and if so, then make a determination of the "amount of reasonable attorneys fees to be awarded." Goold v. Goold,11 Conn. App. 268, 288-89 (1987).
If equity is looked upon as a "thumb on the scales of justice," it is not without its limits. The situation presented here, where the husband, as sole beneficiary, has the apparent or potential ability to meet his alimony obligation by a simple request to the remaining trustees of his mother's trusts, admittedly evokes some sympathy for the wife's position. Nevertheless, where the facts and the law are clear, the court should apply the law, unless that party is without an adequate remedy and a gross injustice would occur but for the intervention of the court. Here, circumstances may have, in the opinion of the wife, deprived her of the full benefit of the bargain which she reached with her husband in 1998. Disappointed and angry, she clings fiercely to the wreckage of that bargain as if such a change in circumstances was outside the contemplation of the parties. This is unrealistic. She has not been cast adrift alone in a leaking craft. She is a person of means and ability, and she can, if she so chooses, with some effort on her part, take steps to soften the blow. To date, she has chosen not to do so. Equity does not lie beyond the relief herein granted.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-82 and 46b-86, hereby makes the following findings:
1. That the date of the last alimony order was April 14, 1998; and that therefore, any modification must be based upon a substantial change of circumstances since that date. Sanchione v. Sanchione, 173 Conn. 397, 408
(1977); Sardilli v. Sardilli, 16 Conn. App. 114, 119 (1988).
2. That credible evidence was submitted to the court that, as to the order of April 14, 1998, service of the post judgment Motion for Modification was made pursuant to Sections 46b-86 (a) and 52-50 C.G.S.; and that therefore, the court has the power to grant a retroactive modification. Shedrick v. Shedrick, 32 Conn. App. 147, 151 (1993); that the motion for modification was served upon the wife on December 28, 2000; and that it is equitable and appropriate that any order be retroactive to January 1, 2001.
3. That since the date of the decree, there has been a substantial change of circumstances in that the husband's health has significantly CT Page 10164 deteriorated which fact impacts his ability to work full time; that his employment was involuntarily terminated; and that it is equitable and appropriate that the husband's alimony obligation be reduced to $3,000.00 per month, for a total alimony obligation from January 1, 2001 through and including August 1, 2002 in the amount of $60,000 with a credit for any alimony actually paid.
4. That the last payment of alimony by the husband to the wife pursuant to the decree was made on or about February 2001 in the amount of $20,000 to cover the months of November and December 2000; that he made no payments from January 1, 2001 through May 2001; that he has made reduced periodic payments of alimony since that date totaling $29,423 ($12,023 in 2001 + $17,400[1] in 2002 = $29,423); and that taking into consideration the modification of the husband's alimony obligation, there is, as of the date of this order, an outstanding arrearage in the amount of $30,527.
5. That the husband's failure to fully comply with the terms of the decree was not wilful and not without good cause; and that the husband is not therefore in contempt.
6. That the husband is in breach of the terms of the decree in one or more respects; that Article 15.1 of the Agreement of the parties dated April 14, 1998 provides that, "in the event it shall be determined by a court of competent jurisdiction that either party shall have breached any of the agreements herein contained, the offending party shall pay to the other party reasonable attorney's fees and court costs incurred in the enforcement of the provisions" thereof; that the attorney's fees and costs incurred by the wife as set forth in the Amended Affidavit of Services Rendered dated March 5, 2002, are reasonable; and that it is equitable and appropriate that the husband be responsible for all or a portion of same.
7. That the husband is the beneficiary of certain trusts established under the will of his late mother; that husband is a co-trustee with his brother and an independent non-family person; that the husband does not have control over the trust income or corpus with regard to any distributions to him or for his benefit; that he does possess a limited power to appoint by will and he may request a distribution therefrom; that any distribution to him is at the sole and absolute discretion of the remaining trustees; that during the life of the trusts he has neither requested nor received any distributions therefrom; and that, except for any future distributions to him, neither the corpus nor income of the trusts is available to the husband to meet his alimony obligation.
8. That as part of its decision the court has considered the fact that CT Page 10165 the wife has voluntarily chosen not to seek employment outside the home in spite of her proven earning capacity, her age and the fact that she has no apparent health problems which would prevent her to do so on a full or part-time basis; that the property settlement reached by the parties at the time of the dissolution of marriage was substantial and left the parties in relative parity; that the wife has chosen to invest a substantial portion of her total assets in low or non-income producing investments, in large part, owner-occupied real estate in Connecticut and Massachusetts which she rents out during part of the year for modest returns; that the husband derives substantial income from sources other than his basic salary, in particular, a real estate partnership with his brother; and that the husband's financial needs are met in part by a contribution from his present spouse, in particular, the use of a residence in New York City owned by her.
 ORDER
IT IS HEREBY ORDERED THAT:
Plaintiffs Motion for Modification (#123.01) is HEREBY GRANTED as follows:
1. Commencing January 1, 2001, and monthly thereafter, the husband shall pay to the wife the sum of $3,000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or March 1, 2007, whichever shall sooner occur.
2. For so long as the husband has an alimony obligation hereunder, within two (2) weeks following receipt of any future distribution of income for either trust under the will of Roslyn Bass, the husband shall pay to the wife 15% of the gross amount of such distribution as and for additional periodic alimony, until the death of either party, the remarriage of the wife, or March 1, 2007, whichever shall sooner occur. The foregoing notwithstanding, no such additional periodic alimony shall exceed, in the aggregate, $64,000 per annum. In addition, the husband shall provide the wife with a copy of the annual federal tax returns for the trust along with any Form K-1 within thirty (30) days of filing, but in no event later than October 1 of the year in which the tax return is due, whichever shall sooner occur.
3. The arrearage in the amount of $30,577 shall be paid as follows: $10,000 within three (3) weeks from the date of this order, and thereafter in four equal installments of $5,144.25 on January 1, 2003, April 1, 2003, July 1, 2003, and October 1, 2003.
4. Within three (3) weeks from the date of this order, the plaintiff shall pay to the attorney for the defendant, Joy Kony Peshkin, Esq., the CT Page 10166 sum of $24,678.94.
5. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
5. Except as set forth above, the terms of the decree of this court dated April 14, 1998, shall remain in full force and effect.
Defendant's Motions for Contempt (#125 and #125.01) are HEREBY DENIED.
THE COURT
SHAY, J.